| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-283 (RMC) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREIK SIMPSON | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

### I.  BACKGROUND

The defendant was charged in a one-count information with Theft of Government Property, in violation of 18 U.S.C. § 641.  On October 16, 2006, the defendant pled guilty to this offense.  At that time the defendant admitted to the following:  on a date between September 29, 2004, and October 23, 2004, Defendant, Dereik S. Simpson, removed a Dell Latitude D600 laptop computer, serial number DGMQP51, from the Department of Homeland Security (DHS)'s Nebraska Avenue Complex (NAC). The NAC is located at 3801 Nebraska Avenue, N.W., in Washington, D.C. DHS is a department or agency of the United States. At the time Defendant Simpson removed the computer from the NAC, he was an employee of Business Plus Corporation (BPC), a contractor that provided office services to DHS, and was able to gain access to the NAC by using identification cards issued to him in connection with his work for BPC. Defendant Simpson knew that he did not have authorization to remove the computer from the NAC and intended to convert the computer for his own use. After taking the computer,

Defendant Simpson gave it to his grandfather as a birthday gift.[1]

On or about February 5, 2005, at about 10:45 p.m., Defendant Simpson entered the NAC, went to the storage area where laptop computers were kept, loaded five (5) Dell Latitude D600 laptop computers onto a cart, and removed them from the storage area. At the time, Defendant Simpson knew that he did not have authorization to remove the computers and intended to convert them to his own use. Defendant Simpson was stopped by security officials before he could leave the NAC with the computers, however. The five (5) computers were returned to the storage area. On February 6, 2006, Defendant Simpson gave a written statement admitting that he had tried to steal the five computers he removed from the NAC storage area the night before and, on another occasion, had stolen at least one other computer from the NAC.

All six (6) computers that Defendant Simpson stole or attempted to steal were owned by Unisys Corporation, and were provided to DHS on a contract basis for the use of DHS employees. A number of Dell Latitude D600 laptop computers, including the computer that Defendant Simpson stole and gave to his grandfather, disappeared from the NAC in the fall of 2004 and winter of 2005. DHS reimbursed Unisys Corporation in the amount of $2,215.00 for each of those computers.

## II.   SENTENCING CALCULATION

### A   Statutory Minimums and Maximums

Pursuant to 18 United States Code § 641, the offense of Theft of Government Property carries a maximum sentence of 10 years imprisonment, a period of 3 years of supervised release,

---

[1] The defendant's mother retrieved the laptop from the defendant's grandfather and provided it to the United States Secret Service Inspection Division.

and a fine of up to $250,000.

    B.    <u>Sentencing Guidelines Calculation</u>

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 8. <u>See</u> PSR ¶ 23. (This calculation contemplates a two level departure for acceptance of responsibility.) The PSR calculates the defendant's criminal history as Category I. <u>See</u> PSR ¶ 26. Therefore, the PSR calculates the guideline range for the defendant at 0 to 6 months. <u>See</u> PSR ¶ 58. However, the defendant is eligible for probation, because the applicable guideline range is in Zone A of the Sentencing Table. <u>See</u> PSR ¶ 65 and U.S.S.G. § 5B1.1(a)(1).

**III.**    <u>**GOVERNMENT'S RECOMMENDATIONS**</u>

    A.    <u>Application of the Federal Guidelines post-Booker</u>

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker,</u> 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in

the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to

criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence.  See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions  . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences

be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See 18 U.S.C. Section

3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for

similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report.

    B.    <u>Basis for Government's Sentencing Recommendation</u>

The defendant has no criminal history, and he is currently gainfully employed. Although his behavior the case now before the Court was criminal, it appears to be the exception, as opposed to the rule. Furthermore, the defendant entered into a pre-indictment plea, thereby saving both the Government and this Court time and resources. That being said, the defendant acted out of greed, with no thought of the repercussions his actions might have, not only to himself, but also to the Department of Homeland Security. He took advantage of the access his employment as a contractor provided him. As such, although the government is recommending a probationary sentence, a significant amount of community service is appropriate in this case, so the defendant will recognize that criminal behavior does have consequences.

**IV.**    **RESTITUTION**

As set forth <u>supra</u> in §I, the defendant was successful in stealing one laptop computer, worth $,2125. However, as noted, that laptop was returned, so there is no need for restitution in this matter.

## V. CONCLUSION

Wherefore, the government respectfully requests that the Court sentence the defendant to 3 years of probation and 100 hours of community service.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

_____
Catherine K. Connelly
Assistant United States Attorney
Major Crimes Section, Mass. Bar No. 649430
555 4th Street, N.W.  #4844
Washington, DC 20001
Phone: 616-3384
Fax: 353-9414

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Melvin Otey, this 22nd day of Jaunary, 2007.

_____
Catherine Connelly
Assistant United States Attorney